# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| CLIFTON REESE, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:21-05087-CV-RK<br>) |
| TYSON FOODS, INC., | )<br>) |
| Defendant. | ) |

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court is Plaintiff's motion for temporary restraining order and preliminary injunction concerning Defendant's COVID-19 vaccine mandate. (Doc. 1-1 at 48-49.) The motion has been fully briefed. (Docs. 11, 14.) A hearing on the motion was held November 4, 2021. After careful consideration of the record and for the reasons below, the motion is **DENIED**.[1]

## Background

Plaintiff Clifton Reese has been an employee of Defendant Tyson Foods, Inc., for many years. On August 3, 2021, in response to the COVID-19 pandemic, Defendant announced its COVID-19 vaccine mandate, requiring all team members nationwide to be fully vaccinated by the following dates:

- All Tyson leadership (officers and above) by September 24, 2021
- All team members in office by October 1, 2021
- All other team members by November 1, 2021
- All new hires must be fully vaccinated prior to their start date
- Team members that are members of a union are subject to bargaining

(Doc. 13-1, pp. 12-14.) Plaintiff found out about the mandate the day it was announced. (*Id.* at 12.) In Defendant's communication of August 3, 2021, to its team members, Defendant indicated that if an employee was seeking a medical or religious accommodation to the vaccination policy, he or she needed to contact Human Resources "immediately" to allow for consideration of the request. (*Id.* at 13, 14.)

---

[1] On review of the record, Defendant's position is found to be persuasive. Portions of Defendant's brief are adopted without further citation.

One month later, Plaintiff sought a religious exemption from Defendant's vaccine mandate in a written letter dated September 3, 2021. (Doc. 13-2.) This was Plaintiff's first indication to Defendant that he intended not to get the COVID-19 vaccine. On September 9, 2021, Defendant emailed Plaintiff, "You are being offered a [religious accommodation], that will go into effect on 11/1. I just need a verbal acceptance from you of the accommodation of LOA."[2] (Doc. 13-1 at 18.) Plaintiff replied on September 10, 2021, indicating, "At this time I DO NOT accept the accommodation of LOA. This is not a 'reasonable accommodation' in response to my Religious Accommodation." (*Id.*) In a letter dated September 17, 2021, Defendant confirmed that Plaintiff's request for a religious accommodation from Defendant's mandatory vaccination requirement had been granted. (Doc. 13-3.) The letter noted the status of the accommodation was subject to change, and that if the accommodation was an unpaid leave of absence that was not job-protected, "it may be necessary to fill your position." (*Id.*) The letter informed Plaintiff that "[i]n the coming months, risks may be mitigated in other ways which may allow you to return to work. If a return-to-work option becomes available, you will be notified." (*Id.*) The letter further indicated that if Defendant determined that providing an accommodation was "an undue hardship, [did] not eliminate the direct threat of disease spread, or [was] unreasonable," it may be revoked or modified, and the employee would be expected to immediately comply with the mandatory vaccination policy or further instructions to avoid termination. (*Id.*) The letter instructed the recipient to "reach out to your local HR partner" if he or she had any questions. (*Id.*)

Plaintiff filed a complaint with the Missouri Commission of Human Rights ("MCHR") on September 26, 2021. (Doc. 1-1 at ¶ 143.) Counsel for Plaintiff notified Defendant in a letter dated October 12, 2021, of Plaintiff's demand that Defendant continue his employment with Defendant "with the already existing COVID restrictions in place [with] which he has complied. We also would demand he receive his full bonus and continued employment with his regular salary and benefits." (Doc. 13-4 at 1-2.) Counsel for Defendant replied in a letter dated October 19, 2021, stating, "We are reviewing your letter and will respond as quickly as possible." (*Id.* at 3.)

Plaintiff filed his five-count Petition against Defendant in the Circuit Court of Barry County, Missouri, on October 26, 2021: Count I - violation of public policy (Doc. 1-1, p. 32); Count II - assault (Doc. 1-1, p. 35); Count III - breach of contract (Doc. 1-1, p. 37); Count IV - invasion of privacy (Doc. 1-1, p. 38); and Count V (alternative to Count I) - violation of the

---

[2] LOA stands for Leave of Absence.

Missouri Human Rights Act ("MHRA") - religious discrimination (Doc. 1-1, p. 40). Plaintiff demanded declaratory and injunctive relief, damages, punitive damages, attorney's fees, and costs. A motion for temporary restraining order and preliminary injunction was filed contemporaneously with the Petition. (Doc. 1-1 at 48-49.)

Defendant removed the case to federal court on October 28, 2021. (Doc. 1.) The motion for temporary restraining order and preliminary injunction was briefed (Docs. 11, 14), and the Court held a hearing on November 4, 2021, during which exhibits were admitted and Plaintiff testified. (Doc. 18.)

At the hearing, Plaintiff introduced an exhibit containing various communications between Defendant and Plaintiff regarding the vaccine mandate, deadlines and instructions related thereto, emails and texts between Plaintiff and Defendant Human Resources personnel ("HR") about the vaccine mandate, Plaintiff's request for religious accommodation, Plaintiff's questions to HR about the specifics of the offered accommodation, HR's email asking for verbal acceptance of the religious accommodation Defendant offered Plaintiff (leave of absence), Plaintiff's email stating he did not accept the accommodation, and an email thread including various employees communicating with Defendant about their vaccination status and intent. (Doc. 13-1.) Plaintiff also separately introduced his letter stating he was requesting a religious accommodation (Doc. 13-2) and Defendant's letter granting that accommodation and explaining it. (Doc. 13-3.) Plaintiff introduced his letter to Defendant demanding Defendant continue Plaintiff's employment under the existing COVID restrictions and with a full bonus, salary, and benefits. (Doc. 13-4.) The exhibit also included defense counsel's response acknowledging receipt of the letter, indicating it was under review, and stating counsel will respond as quickly as possible. (*Id.*) The exhibit included Plaintiff's letter to defense counsel indicating pleadings had been filed and notifying Defendant that Plaintiff was seeking a hearing on a motion for temporary restraining order and preliminary injunction in the matter. (*Id.*)

Plaintiff testified at the time he was placed on leave, he was complying with all of Defendant's COVID-19 safety protocols (other than the vaccine mandate). Plaintiff testified that his understanding is that the COVID-19 vaccines are not completely effective and their origins violate his religious beliefs. Plaintiff testified that the relief he was seeking was to just keep his job and not get the vaccine during the pendency of this litigation. On cross examination, Plaintiff admitted he found out about Defendant's vaccine mandate on August 3, 2021, when it was

3

Case 3:21-cv-05087-RK   Document 25   Filed 11/30/21   Page 3 of 12

announced, or maybe the day after. He admitted he knew at that time that he could seek religious accommodation. Plaintiff also admitted to a phone conversation with HR August 31, 2021, about needing to declare his intent about getting the vaccine but that he did not follow up until his letter dated September 2, 2021, in which he notified Defendant he was seeking a religious exemption from the vaccine mandate. Plaintiff testified that he understood the accommodation Defendant was offering was only leave without pay and no job protection. He testified that at the time, he did not know the leave-of-absence accommodation included the continuation of health benefits and the potential for pursuing alternative jobs with Defendant, but that at the time of the hearing he had come to understand that. Plaintiff testified he had not actively sought other employment, and that his understanding was that if he obtained other employment he would lose his earned bonus. Plaintiff admitted he had access to Defendant's LOA policy while employed. Defendant introduced defense exhibit 29, which was the LOA policy. (Doc. 15-24.) That policy does not indicate that obtaining other employment would result in forfeiting earned bonuses. (*See generally*, Doc. 15-24.)

On redirect, Plaintiff testified that in his conversations with superiors and HR about his religious accommodation, all they told him was it included unpaid leave without a job guarantee, and that they did not tell him about the continuation of benefits or what would happen with any accrued leave or earned bonuses. On re-cross examination, Plaintiff admitted he had not been forced to get the COVID-19 vaccine and that no one had tried to or physically made him get it.

When questioned by the Court as to why he delayed in notifying Defendant that he would seek a religious accommodation to the vaccine policy when the communication he received August 3, 2021, said to contact HR "immediately" to request religious accommodation, he replied he was researching the vaccine and collecting data, and that his wife always researches all medications he and his family take, utilizing peer reviewed articles, to determine whether anything about the medications goes against their religious beliefs. Plaintiff testified the harm he was asserting was financial and emotional.

At the conclusion of the hearing on Plaintiff's motion for temporary restraining order and preliminary injunction, the Court orally denied Plaintiff's motion on the record. (Doc. 18.)

## Legal Standard

The Eighth Circuit considers motions for preliminary injunctions based on the following factors: (1) the threat of irreparable harm to the plaintiff, (2) the state of balance between such

4

harm and the injury that granting the injunction will inflict on other parties, (3) the probability the plaintiff will succeed on the merits, and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

"The United States Supreme Court and the Eighth Circuit Court of Appeals have made clear that a temporary restraining order is an extraordinary and drastic remedy and should not be granted unless plaintiffs clearly carry their burden of persuasion." *Morningside Church, Inc. v. Rutledge*, 471 F. Supp. 3d 921, 924 (W.D. Mo. 2020) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) and *Sanborn Mfg. Co., Inc. v. Campbell/Hausfeld Scott Fetzer Co.*, 997 F.2d 484, 485-96 (8th Cir. 1993)). The Eighth Circuit applies the same standards to a request for a preliminary injunction and temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming the district court's application of the *Dataphase* factors to a motion for a temporary restraining order); *Jackson v. Nat'l Football League*, 802 F. Supp. 226, 229 (D. Minn. 1992).

**Discussion**

**I.     Introduction**

The Court recognizes the sensitivity and significance of the underlying religious concerns of this case. The sensitivities and significance of Plaintiff's religious concerns trigger corresponding ethical, moral, and value-based judgments. This recognition leads the Court to exercise great caution and employ judicial restraint in making its ruling here. Preliminary injunctions and temporary restraining orders are extraordinary and drastic remedies. The Court is mindful of the legal constraints in place limiting the Court's authority to order such exceptional remedies. To weaken these legal constraints by issuing an incorrect ruling out of moral or value-based concerns constitutes judicial activism and is not the proper role of this Court. While value judgments can play a part in legislation, it is not the place of judges, whose role is to interpret the law. *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074, (2018) ("Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences[,]" whereas the courts' role "is to interpret the words consistent with their ordinary meaning . . . at the time Congress enacted the statute."). This Court is unwilling to venture beyond the clear boundaries limiting the authority of the courts to order the extreme remedy of preliminary injunctive relief to invalidate the COVID-19 safety measures of a private employer. Additionally, when the movant seeks "'to

5

enjoin something other than government action based on presumptively reasoned democratic processes,'" the movant must establish a "'fair chance of prevailing.'" *Barrett v. Claycomb*, 705 F.3d 315, 321 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008)). As the Court sets forth below in V, Plaintiff's claims are not likely to succeed on the merits.

## II. Plaintiff's Motion and the Hearing

Plaintiff's motion spans only two pages, is unaccompanied by suggestions in support, and does not mention the likelihood of success on the merits and public interest factors required to be shown for entry of a temporary restraining order or preliminary injunction. Plaintiff fails to specify as to which counts of his Petition he is seeking the temporary restraining order and preliminary injunction, and states only that "Immediate and irreparable injury, loss, and damage [will] result to the Plaintiff by reasons of the threatened action of the Defendant, as more particularly appears in the verified petition filed herein and the attached affidavit of the Plaintiff Clifton Reese." (Doc. 1-1 at 49.)

Of importance at the hearing, Plaintiff's testimony compared to the admitted exhibits indicated Plaintiff had a poor understanding of the religious accommodation Defendant provided. Plaintiff's testified he had not, in fact, been physically forced to get the COVID-19 vaccine as his assault count claimed he would be. (Doc. 1-1 at ¶ 154 ("Tyson's COVID-19 vaccine mandate caused Plaintiff to reasonably believe that Tyson was about to carry out the threat of harmful and offensive contact upon him, by way of forcing Plaintiff to inject an[] untested and potentially unsafe substance into his body.")) Plaintiff additionally conceded his delay of one month in seeking a religious accommodation to the vaccine policy although he knew Defendant instructed that such requests be made "immediately." His testimony further showed he had not sought to mitigate any financial harm from Defendant's actions by seeking other employment.

## III. Plaintiff Has Not Demonstrated a Threat of Irreparable Harm

Plaintiff's motion alleges, absent the extraordinary remedy of a temporary restraining order or preliminary injunction, he is faced with the threat of irreparable harm in the form of permanent leave without pay and the loss of salary, pay, and his earned annual bonus. It is well established, however, that this type of harm does not constitute irreparable harm warranting the entry of a temporary restraining order or a preliminary injunction. *Sampson v. Murray*, 415 U.S. 61, 90, 91-92, 92 n.68 (1974) (acknowledging that a discharged employee might be entitled to a preliminary

6

Case 3:21-cv-05087-RK   Document 25   Filed 11/30/21   Page 6 of 12

injunction in a "genuinely extraordinary situation" but that a satisfactory showing of loss of income coupled with damage to reputation "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case."); *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009); *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 300 (8th Cir. 1996) (finding preliminary injunctive relief was not warranted where a plaintiff had "an adequate remedy at law, namely, the damages and other relief to which she will be entitled if she prevails.").

More to the point, courts recently have consistently rejected claims that vaccine policies like Defendant's cause irreparable nonmonetary harms. *See Barrington v. United Airlines, Inc.*, No. 21-cv-2602, 2021 WL 4840855, at *7 (D. Colo. Oct. 14, 2021) (denying employee's motion for a temporary restraining order where private employer's COVID-19 vaccine policy provided unpaid leave as accommodation, finding "simple economic loss" does not constitute irreparable harm); *Johnson v. Brown*, No. 21-cv-1494, 2021 WL 4846060, at *25 (D. Ore. Oct. 18, 2021) (fears about paying bills, finding another job, or paying for medical care are "routine," not "irreparable," and are "compensable by money damages"); *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027, at *6 (E.D. Ky. Sept. 24, 2021) ("broader implications" of vaccination policies do not support preliminary injunction because irreparable harm "must be actually suffered by the plaintiffs in question"); *Valdez v. Grisham*, 2021 WL 4145746, at *43 (D.N.M. Sept. 13, 2021) ("potential termination and/or inability to continue to work as a nurse" not irreparable harm); *Norris v. Stanley*, 2021 WL 3891615, at *8-9 (W.D. Mich. Aug. 31, 2021) (lost pay and benefits from termination for refusing COVID-19 vaccine not irreparable harm warranting injunctive relief).

Accordingly, the Court finds Plaintiff has not established the irreparable harm element of the required showing for a temporary restraining order or preliminary injunction.

## IV. The Balance Between Harms Warrants Denying Plaintiff's Request

"Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Hancock v. Arnott*, No. 6:18-CV-03170-MDH, 2019 WL 1578768, at *2 (W.D. Mo. Apr. 2, 2019) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Notwithstanding the Court's ruling that Plaintiff has not demonstrated irreparable harm, the Court finds the balance between the alleged harm to Plaintiff and the harm the relief would cause to other litigants additionally weighs in favor of denying a temporary restraining order or

7

Case 3:21-cv-05087-RK   Document 25   Filed 11/30/21   Page 7 of 12

preliminary injunction in this case. The full extent of Plaintiff's argument on this factor is that "[i]f this temporary restraining order and preliminary injunction be granted, the injury, if any to Defendant herein, if found judgment be in the favor of the Defendant, will be inconsiderable compared to damage caused by Plaintiff by loss of his employment." Beyond this conclusory statement, Plaintiff fails to offer any substantive argument or authority regarding this element in his motion or reply. "For this reason alone, Plaintiff has failed to meet [his] burden as to this element, and this factor thus weighs against granting Plaintiff's requested relief." *Barrington*, 2021 WL 4840855, at *8.

Even reading Plaintiff's motion liberally, the potential harm to Plaintiff does not appear to outweigh the potential harm to Defendant if Plaintiff's requested relief is granted. Plaintiff's claimed injury in the absence of preliminary injunctive relief is leave without pay and, allegedly, termination, loss of benefits, and lost income. (Doc. 16 at 3-4.) Defendant contends the harm a preliminary injunction would pose to the health and safety of Plaintiff's co-workers, their families and communities, as well as to Defendant, decisively outweighs Plaintiff's alleged harm, as it would "require the [d]efendant to fundamentally alter its strategy for addressing the health risks posed to its employees and customers by the COVID-19 pandemic." (Doc. 11 at 28 (quoting *Barrington*, 2021 WL 4840855 at *8.)) At the hearing, Plaintiff admitted that the vaccine was important for the health and safety of employees, and Defendant's numerous exhibits indicated the same. (*See generally,* Docs. 15-3 through 15-16, 15-18, 15-20 through 15-23.)

The Court finds the balance of hardships in this case weighs in Defendant's favor. As noted, Plaintiff's alleged injury is primarily economic. The ordering of preliminary injunctive relief, on the other hand, would require Defendant to fundamentally change its strategy for addressing the health risks facing its employees due to the COVID-19 pandemic. This factor weighs against entry of a temporary restraining order or preliminary injunction.

V. **The Likelihood of Success on the Merits Favors Denying the Motion**

"[T]he likelihood of success on the merits is [the] most significant" factor, and "[t]o that end, the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *Barrett*, 705 F.3d at 320 (internal quotations omitted).

A. **Count I - Violation of Public Policy**

Plaintiff is unlikely to succeed on the merits of Count I because no cause of action for violation of public policy exists under Missouri or federal law. To the extent the claim is premised

8

on Plaintiff's MHRA claim, it must be brought under the provisions of that statutory chapter. *See* Mo. Rev. Stat. § 213.070.2. Plaintiff does not plead this claim pursuant to any provision of the MHRA. Plaintiff's violation of public policy claim is not likely to succeed on the merits.

      **B.**      **Counts II, III, and IV – Preemption of the Missouri Human Rights Act**

Defendant contends that Plaintiff's Counts II (assault), III (breach of contract), and IV (invasion of privacy) are unlikely to succeed on the merits because they are preempted, superseded, and displaced by the MHRA pursuant to § 213.070.2. (Doc. 11 at 25.) The Court agrees. Defendant argues that Plaintiff's Petition makes clear that each of his claims arises out of his employment relationship with Defendant. (Doc. 11 at 25.) Defendant points out that the MHRA provides that, in addition to two chapters not relevant here, the MHRA "shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." Mo. Rev. Stat. § 213.070.2. "In other words, in Missouri, damages arising from the employment relationship cannot be redressed except through the specified statutes." *Huskey v. Petsmart, Inc.*, No. 18-00813-CV-W-NKL, 2019 WL 122873, at *2 (W.D. Mo. Jan. 7, 2019).

"[W]hether the exclusive-remedy provision applies turns . . . on whether [Plaintiff's] alleged 'injury or damages' arise from an 'employment relationship.'" *Huskey*, 2019 WL 122873, at *2 (quoting Mo. Rev. Stat. § 213.070.2). Key to this case:

- Count II alleges Defendant assaulted Plaintiff "by way of imposing the COVID-19 vaccine mandate upon him, under penalty of being terminated from his employment." (Doc. 1-1 at ¶ 153.)
- Count III alleges Defendant breached an unidentified contract by "changing Plaintiff's employment status with Defendant and depriving Plaintiff of earned salary, bonus, and benefits" and "harassing and shaming the Plaintiff for his religious beliefs." (*Id.* at ¶ 160(c) and (e).)
- Count IV alleges Tyson disclosed Plaintiff's "private and confidential medical information regarding the COVID vaccination." (*Id.* at ¶ 163.)

These claims concern conduct allegedly perpetrated by Plaintiff's employer, and Plaintiff seeks the same nonspecific "damages" caused by the conduct in each count. Counts II, III, and IV "all arise from the same factual allegations underlying Plaintiff's MHRA claim[]. Accordingly, Plaintiff cannot maintain his common-law claims." *Winfrey v. Ford Motor Co.*, No. 4:19-CV-

9

00889-DGK, 2020 WL 1558117, at *2 (W.D. Mo. Apr. 1, 2020), *aff'd*, 842 F. App'x 5 (8th Cir. 2021).

The Court therefore finds Plaintiff is unlikely to succeed on the merits of his claims in Counts II, III, and IV because of the exclusivity provision of § 213.070.2, Mo. Rev. Stat.

### C.  Count II – Assault

Even if the MHRA did not preclude Plaintiff's assault claim, it is unlikely to succeed on the merits. A claim of assault requires Plaintiff to show "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001). "The assault is complete, if the intent, with the present means of carrying it into effect, exists and preparations therefor have been made . . . even though there has been no actual violence to the person." *Id.* Notably, "in Missouri cases of assault unaccompanied by the physical contact of battery are rare[.]" *Phelps v. Bross*, 73 S.W.3d 651, 655 (Mo. Ct. App. 2002) (noting also only one example case from 1901 in which assault was found where the defendant pointed a pistol at the plaintiff and threatened to shoot her but did not fire the weapon, putting the plaintiff in fear of present violence).

Here, Plaintiff's Petition does not plead physical contact had occurred, and Plaintiff admitted in his testimony he had not been forced to get the vaccination. Additionally, Plaintiff's testimony at the hearing failed to demonstrate any imminence of physical peril to his person. The Court finds Plaintiff's testimony at the hearing on this motion made clear that Plaintiff did not reasonably believe that Defendant "was about to carry out the threat of harmful and offensive contact upon him by forcing him to inject" a COVID-19 vaccine into his body, as set forth in the Petition. (Doc. 1-1 at ¶ 154.) In fact, Plaintiff admitted he had not been forced to get the vaccine.

For this additional reason, the Court finds Plaintiff is unlikely to succeed on the merits of his assault claim in Count II.

### D.  Count III - Breach of Contract

Assuming, for argument's sake, the MHRA exclusivity provision does not bar Plaintiff's breach of contract claim, the Court would still find Plaintiff's Count III unlikely to succeed on the merits. It is axiomatic that a claim for breach of contract requires the Plaintiff to plead the existence of a contract. *See Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 937 (8th Cir. 2013) ("Missouri law considers 'the existence and terms of a contract' to be essential elements of a breach-of-contract action.") (quoting *Keveney v. Missouri Military Acad.*, 304

S.W.3d 98, 104 (Mo. banc 2010)).  Plaintiff's Petition does not allege any particular contract. Rather, Count III alleges only that "Plaintiff has fully performed the legal requirements for his employment with the Defendant[,]" and the full extent of any mention of a contract is that Defendant breached "the employment contract[,]" the nature, terms, and scope of which are not alleged, referenced, or attached.  (Doc. 1-1 at ¶¶ 159-160.)

Plaintiff thus fails to show his breach of contract claim in Count III is likely to succeed on the merits.

### E. Count V - Violation of the MHRA - Religious Discrimination

Finally,[3] the Court finds Plaintiff is unlikely to succeed on the merits of his MHRA claim of religious discrimination due to his failure to exhaust administrative remedies.  "Missouri law requires plaintiffs to exhaust their administrative remedies prior to bringing MHRA claims." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021) (citing Mo. Rev. Stat. § 213.075.1).  "The reason for requiring the pursuit of administrative remedies first is to provide the [administrative body] with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Gates v. City of Lebanon*, 585 F. Supp. 2d 1096, 1099 (W.D. Mo. 2008) (citing *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005)).  "To initiate a claim under the MHRA a party must timely file an administrative complaint with [the] MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter." *Stuart v. Gen'l Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). Although Plaintiff timely filed a complaint with the MCHR on September 26, 2021, Plaintiff's Petition makes clear that he has neither completed adjudication of his claim through the MCHR nor obtained a right-to-sue letter. (*See generally* Doc. 1-1.)  Given this undisputed and statutorily fatal deficiency, Plaintiff is unlikely to succeed on the merits of his MHRA claim.

---

[3] As to Plaintiff's Count IV, it is an invasion of privacy claim based on his unvaccinated status and the resulting posting of his position being revealed to other employees of Defendant without his authorization.  He alleges this caused him mental anguish, harassment, embarrassment, and loss of wages, income, and benefits.  (Doc. 1-1 at 38-39.)  It is unclear if this count is part of Plaintiff's motion for temporary restraining order and preliminary injunction, as these allegations do not appear in the motion. (*See generally, id.* at 48-49.)  In any event, the Court finds Plaintiff's likelihood of success on his invasion of privacy claim is not clear.  However ultimately, (1) the other *Dataphase* factors weigh heavily against the entry of a temporary restraining order or preliminary injunction, and (2) the alleged conduct forming the basis of Count IV is already complete, so the claim appears not to be redressable by the remedy of a temporary restraining order or preliminary injunction.  Accordingly, the likelihood of Plaintiff's success on the merits of this claim is not highly relevant to the propriety of a temporary restraining order or preliminary injunction in this case.

## VI. Public Interest Warrants Denying the Motion

Lastly, the public interest factor weighs in favor of denying Plaintiff's motion for a temporary restraining order and preliminary injunction. Plaintiff makes no substantive argument on this factor in his motion or reply. The Court finds Defendant's cited authorities are persuasive and agrees that the public interest favors private measures like Defendant's COVID-19 vaccination policy that advance the goal of protecting the health and safety of its employees and others with whom they interact. *See, e.g., Beckerich*., 2021 WL 4398027 at *7 ("[E]very person, including the parties in this case, can agree that ending the COVID-19 pandemic is in our collective best interest --and in the public's best interest, as well."); *Barrington*, 2021 WL 4840855 at *8 ("[t]he CDC has consistently instructed that vaccines can reduce the risk of spreading the COVID-19 virus. The Court simply cannot find that enforcement of a policy that protects other employees and conforms to the guidance of the CDC is not in the public interest.")

## Conclusion

Plaintiff has not clearly carried his burden of persuasion showing the extraordinary and drastic remedy of a temporary restraining order or preliminary injunction should be granted in this case. Accordingly, and after careful consideration, Plaintiff's motion (Doc. 1-1 at 48-49) is **DENIED**.

**IT IS SO ORDERED**.

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 30, 2021

12

Case 3:21-cv-05087-RK   Document 25   Filed 11/30/21   Page 12 of 12